ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| OFICINA DE LA PROCURADORA DE LAS MUJERES<br><br>Parte Recurrida<br><br><br><br>v.<br><br><br><br>CORTEVA AGRISCIENCE PUERTO RICO, INC.; ADVANCE SERVICES PROFESSIONAL, INC.<br><br>Parte Recurrente | KLRA202400650 | *Revisión Judicial,* procedente de la Oficina de la Procuradora de las Mujeres<br><br>Caso Núm.: OPM Q-2024-09<br><br>Sobre: Ley Núm. 20-2001, "Ley de la Oficina de la Procuradora de las Mujeres", según enmendada; Ley 3-1942, según enmendada, conocida como la "Ley de Protección de Madres Obreras"; "Ley Núm. 69-1985, según enmendada, mejor conocida como la "Ley para Garantizar la Igualdad de Derecho al Empleo"; Ley 100-1959, según enmendada, conocida como "Ley Anti-discrimen de Puerto Rico"<br><br>**Procedimiento Adjudicativo; Orden para Mostrar Causa** |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 18 de diciembre de 2024.

Compareció ante este Tribunal la parte recurrente, Corteva Agriscience Puerto Rico, Inc. (en adelante, "Corteva" o "Recurrente"), mediante recurso de revisión judicial presentado el 25 de noviembre de 2024. Nos solicitó la revocación de la *Orden y Resolución (*en adelante*, "*Resolución") emitida y notificada por la Oficina de la Procuradora de las Mujeres (en adelante, la "OPM"), el 28 de junio de 2024. Dicho dictamen fue objeto de una "**Moción de Reconsideración**" interpuesta por la Recurrente, la cual fue declarada "No Ha Lugar" el 24 de octubre de 2024.

Por los fundamentos que expondremos a continuación, *revocamos* la *Resolución* recurrida.

**I.**

El caso de epígrafe tuvo su origen el 20 de marzo de 2024, con la presentación de una "**Querella**" por parte de la OPM, en representación de la Sra. Erilyn Ramos Santiago (en adelante, la "señora Ramos Santiago"), en contra de Corteva. En la misma, expresó que, desde el 29 de octubre de 2021 hasta mediados del año 2023, la señora Ramos Santiago ocupó varios puestos en Corteva, incluyendo los siguientes: (1) trabajadora agrícola y (2) ayudante electricista. Especificó que estos puestos se ocuparon a través de la contratación de la compañía de empleos conocida como Advance Services Professional, Inc. (en adelante, "Advance"). Acentuó que las funciones laborales del puesto de ayudante electricista incluían las siguientes: (1) operar equipo pesado, (2) proporcionar recomendaciones para mejorar el ambiente laboral, (3) mantener el equipo de la empresa limpio y almacenado correctamente, (4) capacidad de mantenerse de pie y/o agachado por largos periodos y (5) mover y levantar objetos de cincuenta (50) libras o más.

Asimismo, alegó que el 28 de noviembre de 2023 la señora Ramos Santiago le presentó a Advance cierto certificado médico que indicaba que durante el término de su embarazo no podía realizar tareas que involucraran el levantamiento de instrumentos que pesaran más de diez (10) libras. Señaló que al Corteva advenir en conocimiento de lo anterior, le informó a Advance que la señora Ramos Santiago debía ser reubicada de sus funciones, ya que no cumplía con uno de los requisitos esenciales de su puesto, entiéndase, levantar objetos de cincuenta (50) libras o más. Manifestó que la Recurrente le comunicó a Advance que tenía una plaza disponible en el puesto de muestreo de semillas, el cual cumplía con las restricciones de su embarazo. Destacó que distinto al puesto de ayudante electricista, el horario de la referida plaza comenzaba a las 4:00 a.m.

La OPM adujo que el 31 de julio de 2023, Advance le confirmó a Corteva mediante correo electrónico que la señora Ramos Santiago estaba dispuesta a laborar en cualquier área y en el horario de 4:00 a.m. Mencionó que el 1 de agosto de 2023 la señora Ramos Santiago se presentó a trabajar

al puesto de muestreo de semillas pero que al entender que cumplía con la mayoría de los requisitos de ayudante electricista, solicitó volver a dicho cargo. Relató que, ante tal solicitud, la Recurrente le expresó a la señora Ramos Santiago que el único puesto disponible ajustable a las restricciones de su embarazo lo era el muestreo de semillas. Enunció que el 1 de agosto de 2023 la señora Ramos Santiago fue suspendida y/o despedida de sus funciones y que ni Advance ni Corteva le han asignado trabajo ni restituido a su puesto.

En armonía con lo anterior, peticionó lo siguiente: (1) la suma de $50,000.00 por las angustias mentales y daños morales que le ha causado a la señora Ramos Santiago la suspensión y/o despido injustificado, la cual deberá ser duplicada conforme a la Ley Núm. 3 del 13 de marzo de 1942, *infra*, (2) $50,000.00 por el discrimen sufrido por razón de su embarazo, cuantía que también debía ser duplicada conforme a la referida ley y (3) $39,600.00 por los salarios, bonos, estipendios y licencias que hubiera tenido derecho a recibir de no haber sido despedida ilegalmente.

Posteriormente, el 1 de abril de 2024, la OPM emitió "**Procedimiento Adjudicativo; Orden para Mostrar Causa**" en la que le concedió a Corteva y a Advance un término de treinta (30) días para que presentaran razones por las cuales no se les debía imponer multas por la suma de $60,000.00 por incumplir las siguientes leyes: (1) Ley Núm. 3 de 13 de marzo de 1943, *infra*, (2) Ley Núm. 69 de 6 de julio de 1985, *infra*, y la (3) Ley Núm. 100 de 30 de junio de 1959, *infra*. En respuesta a ello, el 1 de mayo de 2024, la Recurrente presentó una "**Moción en Cumplimiento con Orden para Mostrar Causa al Honorable Tribunal**", a través de la cual negó la mayoría de las alegaciones expuestas en su contra y clarificó que la señora Ramos Santiago no ocupó puesto alguno, sino que llevó a cabo diversas funciones mediante contratos de asignaciones de empleo temporero en Corteva. De igual manera, argumentó que se comunicó con Advance para proveerle a la señora Ramos Santiago un acomodo razonable que se ajustara a las restricciones impuestas por su facultativo médico con el propósito de velar por su bienestar general

en su etapa de gestación, así como la seguridad de los electricistas a los que ésta asistía. También señaló que, al no ser el empleador de la señora Ramos Santiago, no tenía obligación legal alguna de proporcionarle acomodos, pero decidió hacerlo de buena fe. Por último, entre sus defensas afirmativas, incluyó las siguientes: (1) las reclamaciones están prescritas, (2) no fue notificada de la "**Querella**" presentada en su contra, y (3) la OPM no poseía jurisdicción para atender la controversia en cuestión.

Por su parte, el 30 de mayo de 2024, Advance presentó su "**Contestación a Orden para Mostrar Causa**" mediante la cual negó la mayoría de las reclamaciones expuestas en su contra y aclaró lo siguiente: (1) la señora Ramos Santiago no es empleada de Corteva, (2) las posiciones de obrero agrícola y ayudante electricista requieren mover y levantar objetos con un peso máximo de hasta 50 libras y no a partir de cincuenta (50) libras y que (3) la señora Ramos Santiago no operó equipo pesado, puesto que no posee las licencias correspondientes para ejercer dicha función. Asimismo, alegó que la señora Ramos Santiago se ausentó de su trabajo en trece (13) ocasiones desde el 3 de mayo de 2023 hasta el 12 de julio de 2023. Además, afirmó que el 31 de julio de 2023 se le informó a la señora Ramos Santiago que debía tomar determinado adiestramiento el 4 de agosto de 2023, sin embargo, ella no se presentó a trabajar.

Así las cosas, el 5 de junio de 2024, Corteva y Advance presentaron una "**Moción Conjunta de Desestimación Por Falta de Jurisdicción**" (en adelante, "Moción de Desestimación") mediante la cual sostuvieron que la OPM carecía de jurisdicción para atender las reclamaciones laborables planteadas, ya que la Legislatura no le ha otorgado tal delegación de manera expresa y dicho foro no cuenta con el peritaje necesario para abordar reclamaciones de discrimen bajo las leyes en cuestión. Así pues, argumentó que el foro adecuado para dilucidar la controversia lo es el Tribunal de Primera Instancia. A tenor con lo anterior, solicitó la desestimación del caso por falta de jurisdicción sobre la materia.

En reacción a ello, el 20 de junio de 2024, la OPM presentó una "**Oposición a Moción Conjunta de Desestimación**" en la que arguyó que la Ley Núm. 38-2017, *infra*, y la Ley Núm. 20-2001, *infra*, les confieren a los oficiales examinadores de la OPM la facultad para atender controversias de índole laboral. Del mismo modo, reconoció que carece de facultad para otorgar remedios a una mujer discriminada, al amparo de la Ley Núm. 100 de 30 de junio de 1959, *infra.* No obstante lo anterior, afirmó que la causa de acción del presente caso es de carácter estrictamente administrativo, limitada a los poderes de investigación, fiscalización e imposición de multas delegados expresamente a la OPM por la Ley Núm. 20-2001, *infra*. Más adelante, el 28 de junio de 2024, la OPM emitió la *Resolución* recurrida a través de la cual declaró "No Ha Lugar" la *Moción de Desestimación,* fundamentándose en que el legislador le confirió la facultad de comparecer en representación de las mujeres que cualifiquen ante cualquier foro administrativo, tribunal, junta, comisión u oficina, para gestionar beneficios o derechos amparados en las leyes y reglamentos del Gobierno de Puerto Rico. Insatisfecho con esta decisión, la Recurrente presentó una "**Moción de Reconsideración**" en la que sostuvo que la OMP no es la agencia encargada de atender asuntos técnicos vinculados al derecho laboral y su legislación protectora y que, en todo caso, corresponde al Departamento del Trabajo y Recursos Humanos, como entidad con mayor peritaje en la materia, ocuparse de la legislación laboral y asuntos relacionados con el empleo. Dicha moción fue declarada "No Ha Lugar" el 24 de octubre de 2024.

Aún inconforme con lo anteriormente resuelto, la Recurrente acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló el siguiente error:

**A. ERRO EL OFICIAL EXAMINADOR AL DETERMINAR QUE LA OPM TIENE JURISDICCION SOBRE LA RECLAMACION BAJO LA LEY 100, LEY 69 Y LEY 3.**

El 16 de diciembre de 2024, compareció la OPM mediante "**Oposición a Recurso de Revisión Judicial**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

La Sección 4.2 de la Ley Núm. 38-2017, según enmendada, mejor conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", confiere a las personas afectadas por una orden o resolución final dictada por una agencia administrativa la facultad de acudir ante este Tribunal mediante la presentación de una solicitud de revisión judicial. En términos precisos, dicho Artículo dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo. Si la fecha de archivo en autos de copia de la notificación de la orden o resolución final de la agencia o del organismo administrativo apelativo correspondiente es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo. 3 LPRA sec. 9672.

Por su parte, el Artículo 4.006 de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, conocida como la "Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003" nos limita a atender, mediante recurso de revisión judicial, únicamente las decisiones, órdenes y resoluciones finales emitidas por organismos o agencias administrativas. 4 LPRA sec. 24y. En esencia, esto implica que, como norma general, solo estamos facultados para revisar resoluciones que produzcan efectos sustanciales sobre las partes y que resuelvan de manera definitiva la controversia planteada ante la agencia, sin dejar asuntos pendientes. Bird Const. Corp. v. A.E.E., 152 DPR 928, 935-936 (2000). **No obstante lo anterior y como excepción a dicha regla, nuestro máximo foro ha**

**precisado que, cuando un organismo administrativo carece de jurisdicción, las resoluciones interlocutorias emitidas por la agencia pueden ser objeto de revisión ante este Tribunal**. Comisionado Seguros v. Universal, 167 DPR 21, 30 (2006). Ello es así, pues resulta "innecesario e injusto requerirle a una parte que litigue si el organismo administrativo carece de jurisdicción con el solo fin de que se cumpla con el requisito de finalidad". Íd. (citando a D. Fernández, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Colombia, Ed. Forum, 2001, págs. 474-475).

**B.**

El término jurisdicción ha sido definido como el poder y autoridad que poseen los tribunales para considerar y decidir sobre las controversias ante su consideración. Cobra Acquisitions v. Municipio de Yabucoa et al., 210 DPR 384, 394 (2022). Para adjudicar un caso, el tribunal debe tener jurisdicción tanto sobre la materia en cuestión como sobre las partes en disputa. Adm. Terrenos v. Ponce Bayland, 207 DPR 586, 600 (2021). La jurisdicción sobre la materia se trata de la capacidad del tribunal para abordar y solucionar controversias sobre aspectos legales particulares. Rodríguez Rivera v. De León Otano, 191 DPR 700, 708 (2014). Es por ello que los tribunales deben ser celosos guardianes de su jurisdicción. Torres Alvarado v. Madera Atiles, 202 DPR 495, 500 (2019).

Así pues, la ausencia de jurisdicción conlleva las siguientes consecuencias inexonerablemente fatales: (1) la falta de jurisdicción no es susceptible de ser subsanada, (2) las partes no pueden voluntariamente otorgarle jurisdicción sobre la materia a un tribunal, ni el tribunal puede abrogársela, (3) los dictámenes de un foro sin jurisdicción sobre la materia son nulos, (4) los tribunales tiene el ineludible deber de auscultar su propia jurisdicción, (5) los tribunales apelativos, además, deberán examinar la jurisdicción del foro de donde procede el recurso y (6) el planteamiento de falta de jurisdicción sobre la materia puede presentarse en cualquier etapa del procedimiento. Allied Mgmt. Group. v. Oriental Bank, 204 DPR 374, 386

(2020). A causa de lo antes dicho, cuando un tribunal determina que no tiene jurisdicción sobre la materia, solo puede así declararlo y desestimar.

**C.**

La Ley Núm. 20-2001, según enmendada, mejor conocida como "Ley de la Oficina de la Procuradora de las Mujeres" (en adelante, "Ley Núm. 20"), fue promulgada con el fin ulterior de disminuir la opresión, discriminación y marginación de la mujer en sus diferentes manifestaciones y promover la equidad de género. *Véase*, Exposición de Motivos, Ley Núm. 20. Así, como política pública de dicho estatuto, el Gobierno de Puerto Rico busca "garantizar el pleno desarrollo y respeto de los derechos humanos de las mujeres y el ejercicio y disfrute de sus libertades fundamentales". 1 LPRA sec. 311 nota.

Para cumplir con dichos propósitos, se creó la Oficina de la Procuradora de las Mujeres, la cual es la entidad encargada de representar a las mujeres en su carácter individual o como clase para la defensa de sus derechos. Íd. Entre sus deberes y funciones se encuentran los siguientes:

(a) Realizar y fomentar estudios o investigaciones, así como recopilar y analizar estadísticas sobre la situación de las mujeres, analizar los factores que afectan los derechos de las mujeres en todas las esferas de su vida social, política, económica, cultural y civil, así como las causas de la desigualdad en el trato, en el acceso y la participación en materia de educación y capacitación, la salud, el empleo, la autogestión, el desarrollo económico y, en general, en el ejercicio de sus derechos civiles, políticos, sociales y culturales, incluyendo la participación en la toma de decisiones a todo nivel, entre otros.

(b**) Fiscalizar el cumplimiento de la política pública establecida en esta Ley, velar por los derechos de las mujeres y asegurar que las agencias públicas cumplan y adopten programas de acción afirmativa o correctiva, promover que las entidades privadas las incorporen, así como evaluar los programas ya existentes, a fin de lograr la eliminación del discrimen y la desigualdad y propiciar la más plena participación ciudadana de las mujeres**.

(c) Radicar, a su discreción, ante los tribunales, los foros administrativos o instrumentalidades y subdivisiones políticas del Estado Libre Asociado, por sí o en representación de la parte interesada, ya sea mujeres individuales o una clase, las acciones que estime pertinente para atender las violaciones a la política pública establecida en esta ley. La Oficina estará exenta del pago y cancelación de toda clase de sellos, aranceles y derechos requeridos para la radicación y tramitación, de cualesquiera escritos, acciones o procedimientos, o para la obtención de copias de cualquier documento ante los tribunales

de justicia y agencias administrativas del Estado Libre Asociado de Puerto Rico.

[…]

(k) Efectuar todas aquellas gestiones necesarias para propiciar el desarrollo individual y socioeconómico de las mujeres. 1 LPRA sec. 316 (énfasis suplido).

Es decir, la OMP está facultada para llevar a cabo estudios sobre las situaciones y realidades de las mujeres en distintos contextos, salvaguardar sus derechos y cuando lo estime pertinente, presentar las acciones legales correspondientes ante los tribunales de Puerto Rico para atender cualquier infracción de esos derechos. En concordancia con lo anterior, la referida legislación, le otorga a la Procuradora de Mujeres el poder de atender, investigar y adjudicar querellas relacionadas con acciones u omisiones que violen los derechos de las mujeres o les impidan acceder a los beneficios y oportunidades a los que tienen derecho, y tomar las acciones necesarias para tramitar las reclamaciones que favorezcan los objetivos de la ley, incluyendo la provisión de representación legal en el proceso de dichas reclamaciones. 1 LPRA sec. 318. La Procuradora también puede imponer y cobrar multas administrativas de hasta $10,000.00 por acciones u omisiones que violen los derechos de la mujer garantizados por la Constitución o las leyes de Puerto Rico, así como determinar la compensación por los daños y perjuicios causados, en los casos que proceda. Íd. No obstante lo anterior, **la Procuradora de Mujeres no procederá con la investigación de las querellas que versen sobre asuntos que se encuentren fuera del ámbito de su jurisdicción**. 1 LPRA sec. 320 (énfasis suplido).

**D.**

El Artículo II, de la Sección 1 de la Constitución de Puerto Rico dispone que "[n]o podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. Tanto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana". Art. II, sec. 1, Const. PR. LPRA. Tomo I. En el ámbito del derecho privado, existen diversos estatutos que extienden estos principios al contexto laboral, incluyendo la Ley Núm. 100 de 30 de junio de

1959, según enmendada, mejor conocida como "Ley Antidiscrimen de Puerto Rico" (en adelante, "Ley 100"), la Ley Núm. 3 del 13 de marzo de 1942, según enmendada, conocida como la "Ley de Protección de Madres Obreras" (en adelante, "Ley Núm. 3"), y la Ley Núm. 69 de 6 de julio de 1985, mejor conocida como "Ley para Garantizar la Igualdad de Derecho al Empleo" (en adelante, "Ley Núm. 69"), garantizando así la protección contra la discriminación en el empleo por razón de sexo o género. Dichas piezas legislativas incorporan el lenguaje constitucional y establecen responsabilidad civil para aquellos patronos privados que discriminen en el reclutamiento o en el empleo al crear una causa de acción de daños y perjuicios para el empleado discriminado. Díaz v. Windham Hotel Corp., 155 DPR 364, 381 (2001).

En lo aquí concerniente, el Artículo 1 de la Ley Núm. 100, *supra*, establece que:

> **Todo patrono que despida, suspenda o discrimine contra un empleado suyo en relación a su sueldo, salario, jornal o compensación, términos, categorías, condiciones o privilegios de su trabajo, o que deje de emplear o rehúse emplear o reemplear a una persona, o limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo o que afecten su estatus de empleado, por razón de** edad, según ésta se define más adelante, raza, color, **sexo**, orientación sexual, identidad de género, origen social o nacional, condición social, afiliación política, o ideas políticas o religiosas, o por ser víctima o ser percibida como víctima de violencia doméstica, agresión sexual o acecho, o por ser militar, exmilitar, servir o haber servido en las Fuerzas Armadas de los Estados Unidos o por ostentar la condición de veterano del empleado o solicitante de empleo.
>
> (a) Incurrirá en responsabilidad civil:
>
> > (1) Por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo;
> >
> > (2) o por una suma no menor de quinientos dólares ($500.00) ni mayor de dos mil dólares ($2,000.00), a discreción del tribunal, si no se pudieren determinar daños pecuniarios;
> >
> > (3) o el doble de la cantidad de los daños ocasionados si ésta fuere inferior a la suma de quinientos dólares ($500.00), e
>
> (b) incurrirá, además, en un delito menos grave y, convicto que fuere, será castigado con multa de hasta cinco mil dólares ($5,000.00), o cárcel por un término no mayor

de noventa (90) días, o ambas penas, a discreción del tribunal.

[…]

El tribunal, en la sentencia que dicte en acciones civiles interpuestas bajo las precedentes disposiciones, podrá ordenar al patrono que reponga en su empleo al trabajador y que cese y desista del acto de que se trate. 29 LPRA sec. 146 (énfasis suplido).

Respecto al foro donde deberán dilucidarse las controversias surgidas en virtud de la Ley Núm. 100, *supra*, el Artículo 4 de la referida ley dispone claramente que éstas deberán ser atendidas y adjudicadas en los Tribunales de Puerto Rico. En detalle, establece lo siguiente:

**El Tribunal de Primera Instancia y el Tribunal de Distrito tendrán jurisdicción original concurrente en los casos que surgieren bajo esta ley.** Las reclamaciones civiles podrán tramitarse por acción ordinaria o mediante el procedimiento de querella establecido por la Ley Núm. 10 de 14 de noviembre de 1917, según ha sido o fuere posteriormente enmendada. 29 LPRA sec. 149 (énfasis suplido).

De igual manera, nuestro Tribunal Supremo ha enfatizado que todo obrero que considere que tiene una causa de acción bajo la Ley Núm. 100, *supra*, puede acudir directamente a los tribunales en jurisdicción original, sin necesidad de recurrir a previamente a un foro distinto. Quiñones v. Asociación, 161 DPR 668, 676-677 (2004). Lo anterior implica que las personas que han sufrido discriminación en el empleo por razón de sexo o género no tienen que acudir ante una agencia administrativa antes de instar una causa de acción en los tribunales.

Por otro lado, la Ley Núm. 69, *supra*, fue promulgada con la finalidad de eludir la problemática social de discriminación por razón de sexo y garantizar la igualdad de derecho al empleo tanto de la mujer como del hombre, prohibiendo las actuaciones de los que fomentan el discrimen, estableciendo responsabilidades e imponiendo penalidades. 29 LPRA sec. 1321. Cónsono con ello, el Artículo 14 de la antedicha ley dispone que se considerará una práctica ilegal de empleo cualquier política o práctica escrita en la que un patrono excluya del empleo a un empleado por razón de embarazo, parto o condiciones relacionadas. 29 LPRA sec. 1334. Asimismo, establece que todas aquellas limitaciones causadas o atribuidas al embarazo

para fines relacionados con el empleo deberán ser tratadas de la misma manera que se tratan otras incapacidades causadas o atribuidas a otros padecimientos médicos. Íd. Además, al igual que la Ley Núm. 100, *supra*, este estatuto le confiere jurisdicción original a los Tribunales de Puerto Rico para atender y resolver las controversias que surjan en virtud de ella. 29 LPRA sec. 1338.

Por su parte, la Ley Núm. 3, *supra*, se creó con el objetivo de proteger a las madres obreras de Puerto Rico y proveerles un período de descanso en las semanas que preceden y le siguen al alumbramiento. Así pues, la Sección 2 de esta ley dispone que las obreras en estado grávido tienen derecho a un tiempo de descanso consistente de cuatro (4) semanas antes del parto y cuatro (4) semanas después de éste, con la opción de tomar solo una semana de descanso prenatal y extender hasta siete (7) semanas el descanso posnatal. 29 LPRA sec. 467. Del mismo modo, dicho estatuto establece que el patrono está obligado a pagarle a las madres obreras la totalidad del sueldo, salario o compensación que estuvieran recibiendo por su trabajo durante el período de reposo. Íd. Respecto a la imposición de multas, la Sección 4 establece lo siguiente:

> (a) **Todo patrono que despida, suspenda, reduzca el salario, o discrimine en cualquier forma contra una trabajadora por razón de la merma en su producción mientras ésta se encuentre en estado de embarazo o rehúse restituirla en su trabajo luego del alumbramiento** o adopción de un menor a tenor con la legislación y procedimientos legales vigentes en Puerto Rico o cualquier jurisdicción de los Estados Unidos de América, **incurrirá en responsabilidad civil por una suma igual al doble del importe de los daños causados a la trabajadora, o por una suma no menor de mil (1,000) dólares ni mayor de cinco mil (5,000) dólares a discreción del Tribunal si no se pudieran determinar daños pecuniarios o el doble de éstos, si montaran a una suma menor de mil (1,000) dólares.** La empleada además tendrá derecho a que se le reponga en su trabajo so pena de incurrir el patrono en daños adicionales idénticos o iguales a los establecidos en esta Sección. En todo caso de despido a una mujer embarazada se presume que la acción del patrono fue injustificada. El patrono deberá presentar suficiente prueba para rebatir la presunción. 29 LPRA sec. 469 (énfasis suplido).

De la disposición transcrita, se desprende claramente que, al igual que la Ley Núm. 100, *supra*, y la Ley Núm. 69 *supra*, el foro con jurisdicción para

imponer multas en virtud de la Ley Núm. 3, *supra*, es el Tribunal de Primera Instancia y no un organismo o agencia administrativa.

**III.**

En el presente caso, la Recurrente nos solicitó la revocación de la *Resolución* emitida por la OPM, a través de la cual se declaró "No Ha Lugar" la *Moción de Desestimación* interpuesta por Corteva y Advance. Como único señalamiento de error, la Recurrente plantea que la Oficial Examinadora erró al determinar que la OPM tiene jurisdicción sobre las reclamaciones instadas al amparo de la Ley Núm. 100, *supra*, la Ley Núm. 69, *supra*, y la Ley Núm. 3, *supra*. Veamos.

Surge del expediente ante nuestra consideración que en el año 2021 la señora Ramos Santiago fue contratada por la compañía Advance para laborar en la corporación Corteva. Esta ocupó varios puestos en dicha entidad incluyendo el de trabajadora agrícola y ayudante electricista. Como parte de las funciones de ayudante electricista, se le requería el levantamiento de objetos pesados. El 28 de noviembre de 2023, la señora Ramos Santiago le presentó a Advance cierto certificado médico que indicaba que esta no podía realizar tareas que involucraran el levantamiento de instrumentos que pesaran más de diez (10) libras. Como consecuencia de lo anterior, la señora Ramos Santiago fue reubicada al puesto de muestreo de semillas. El 1 de agosto de 2023, la señora Ramos Santiago se presentó a laborar en el puesto de muestreo de semillas, pero al considerar que cumplía con la mayoría de los requisitos para el cargo de ayudante electricista, solicitó reincorporarse a dicha posición. Al no ser reinstalada, el 20 de marzo de 2024, la OPM presentó una "**Querella**" en representación de la señora Ramos Santiago en contra de Corteva. Luego de varios trámites procesales, la Recurrente y Advance presentaron la *Moción de Desestimación* en la que alegaron que la OPM no poseía jurisdicción sobre la materia. Dicha solicitud fue declarada "No Ha Lugar" el 28 de junio de 2024.

Según expusimos, como norma general, nuestra jurisdicción está limitada a revisar órdenes o resoluciones finales de una agencia.

Ciertamente, el dictamen recurrido no trata de una orden final, sino de una determinación interlocutoria por parte de una agencia administrativa. Ahora bien, a modo de excepción, un dictamen interlocutorio es revisable cuando la agencia claramente está actuando sin jurisdicción. Veamos.

Conforme hemos adelantado en los apartados anteriores, la Ley Núm. 20, *supra*, fue promulgada con el propósito de evitar y disminuir la discriminación y desigualdad de la mujer en distintos contextos. Así pues, se creó la OPM y se le otorgó el deber de fiscalizar el cumplimiento de la política pública establecida en la ley y velar por los derechos de las mujeres. 1 LPRA sec. 316. Asimismo, se le concedió a la Procuradora de Mujeres el poder de atender, investigar y adjudicar querellas relacionadas con violaciones de los derechos de las mujeres. Sin embargo, la referida ley enfatiza que esta no puede intervenir en los casos que estén fuera del alcance de su jurisdicción. 1 LPRA sec. 320.

Por otro lado, nuestra Constitución prohíbe la discriminación por razones de sexo, principio que ha sido extendido por diversos estatutos al ámbito laboral privado. Tanto la Ley Núm. 100, *supra*, como la Ley Núm. 69, *supra*, confieren jurisdicción original al Tribunal de Primera Instancia sobre las controversias que surjan de ellas. Igualmente, la Ley Núm. 3, *supra*, establece de manera explícita que el foro competente para imponer multas bajo dicho estatuto es el Tribunal de Primera Instancia. Lo anterior significa que cualquier reclamación laboral que surja bajo el palio de dichos estatutos debe ser presentada ante el Tribunal de Primera Instancia y no ante una entidad administrativa, como lo es la OPM.

En el presente caso, la OPM atribuye su autoridad en ley para atender las controversias expresando que el legislador le otorgó la facultad de representar a las mujeres en la gestión de beneficios ante diversos foros, incluyendo el ámbito laboral. Por su parte, Corteva argumenta que a la OPM no se le confirió la autoridad para resolver querellas laborales ni adjudicar dichas controversias de forma definitiva.

Tras un análisis exhaustivo y sosegado de los estatutos aplicables ante nuestra controversia, hemos arribado a la conclusión de que la OPM no tiene jurisdicción para conocer sobre las controversias que surjan en virtud de la Ley Núm. 100, *supra*, la Ley Núm. 69, *supra,* y la Ley Núm. 3, *supra*. Si bien reconocemos que la OPM posee un mandato amplio para proteger los derechos de las mujeres y prevenir la discriminación, su intervención está limitada a los casos dentro de su jurisdicción. El examen minucioso de la ley habilitadora de la OPM revela que dentro de sus deberes y funciones no figura el poder de adjudicar reclamaciones bajo leyes antidiscrimen. Ello, distinto a la facultad que se le otorgó al Departamento del Trabajo y Recursos Humanos de investigar, por conducto de la Unidad Antidiscrimen, asuntos relacionados a prácticas discriminatorias.

Así pues, al analizar las disposiciones de los estatutos aplicables, y bajo los cuales se inició el procedimiento administrativo que nos ocupa, vemos que tanto la Ley Núm. 100, *supra*, como la Ley Núm. 69, *supra*, le confieren jurisdicción original al Tribunal de Primera Instancia para resolver las disputas relacionadas a estas leyes. Asimismo, la Ley Núm. 3, *supra*, establece de manera expresa que el foro con jurisdicción para imponer las sanciones, según peticionadas en el presente caso, también lo es el Tribunal de Primera Instancia.

Por consiguiente, la OPM carece del poder necesario para atender y adjudicar estas controversias de manera definitiva, ya que dicha autoridad está expresamente asignada a los Tribunales de Puerto Rico y no a un organismo administrativo, como la OPM.

Por último, es menester aclarar que nos encontramos ante una clara falta de jurisdicción que nos permite, a modo de excepción, revisar la *Resolución* recurrida. Ello pues, resultaría innecesario e injusto exigirle a una parte que litigue si la agencia administrativa carece de jurisdicción con el único propósito de que se cumpla con el requerimiento de finalidad. Tribunal.Comisionado Seguros v. Universal, *supra*, pág. 30. En vista de lo anterior, es forzoso concluir que se cometió el error señalado.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *revocamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones